UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NIKI DASH,

    Plaintiff,

v.                                                  Case No: 8:16-cv-2128-T-36AAS

MIDLAND FUNDING LLC,

    Defendant.
_____/

## **O R D E R**

This matter comes before the Court upon the Defendant's Motion to Dismiss (Doc. 15), to which Plaintiff filed a response in opposition (Doc. 17) and Defendant replied (Doc. 25). In the motion, Defendant argues that Plaintiff's Complaint does not state a claim for relief because it contains conclusory allegations that its reporting of a purported improper creditor classification code under the Metro II Credit Reporting Resource Guide violates the Fair Debt Collection Practices Act. The Court, having considered the motion and being fully advised in the premises, will grant Defendant's Motion to Dismiss.

    I.    **STATEMENT OF FACTS**[1]

On or about July 2009, Plaintiff Niki Dash allegedly incurred debt to Chase Bank, N.A. ("Chase") relating to credit card charges for the purchase of consumer goods and services primarily for personal, family, or household purposes. Doc. 2 at ¶¶ 10, 12. On July 27, 2010, Chase transferred the debt to Defendant Midland Funding, LLC ("Midland"). Chase conveyed the nature of the debt to Midland. *Id*. at ¶ 14. On May 19, 2016, Midland reported the debt to Trans Union, a

---

[1] The following statement of facts is derived from the Complaint (Doc. 1), the allegations of which the Court must accept as true in ruling on the instant Motion. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

credit reporting agency ("CRA"). *Id*. at ¶ 15. Midland reports its debt to CRAs using "Metro II" reporting language which includes certain creditor classification codes ("CCC") in its Credit Reporting Resource Guide ("CRRG"). *Id*. at ¶¶ 16-17. The CRRG assigns "01" as the CCC for debts related to retail transactions and "12" for debts related to financial transactions. *Id*. at ¶ 19.

Dash alleges that Midland reported the incorrect code for his alleged debt, and that the misrepresentation of a CCC could confuse unsophisticated consumers about the nature of the alleged debt owed. *Id*. at ¶ 20. Based on those factual allegations, Dash seeks relief for violations of 15 U.S.C. § 1692e(2)(a), § 1692e(8), and § 1692e(10) due to Midland's false representation about the character of his alleged debt. *Id*. at ¶¶ 26-27.

## II.   LEGAL STANDARD

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.   DISCUSSION

Midland argues that Dash's Complaint does not state a claim for relief under the FDCPA. The Metro II CRRG provides certain industry standards for the reporting of credit information by

furnishers to CRAs. Midland argues that Dash has not identified any provision in the FDCPA or the CRRG which mandates its use of code "12" to identify the original creditor in this case. And, Midland argues, there is no allegation to support the contention that classifying the underlying debt as "retail" was false or improper because the CRRG does not define the CCCs.

The FDCPA prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures. 15 U.S.C. §§ 1692d, 1692e, 1692f. The FDCPA applies to "debt collectors," defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Section 1692e generally prohibits the use of any false, deceptive, or misleading representations or means to collect a debt. *Id*. at § 1692e.

To state a claim under the FDCPA, a plaintiff must allege: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Fuller v. Becker & Poliakoff, P.A.,* 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002); *see also Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1235 (S.D. Fla. 2015).

As for Plaintiff's specific FDCPA claims, section 1692e(2)(a) prohibits "false representation of … the character, amount, or legal status of any debt[.]" 15 U.S.C. § 1692e(2)(a). Section 1692e(8) prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." *Id*. at § 1692e(8). And § 1692e(10) prohibits "[t]he

use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id*. at § 1692e(10). All of Dash's claims are based on Defendant's failure to use the correct classification code to describe the original creditor in its report to the CRA which allegedly violates § 1692e because it does not communicate that the debt derived from a creditor who is in the financial industry as opposed to the retail industry. *See* Doc. 2 at ¶¶ 25-27.

The parties do not dispute, and the Court will assume for purposes of the Motion, that Dash was the object of debt collection activity, and Midland is a debt collector as defined by the FDCPA. But Dash's claims do not sufficiently allege that Midland engaged in an act or omission prohibited by the FDCPA. The Complaint's conclusory allegations do not lend factual support as to why Midland's failure to follow the Metro 2 guidelines is a violation of the FDCPA. Several courts have examined this issue and found that the allegations that a creditor did not follow industry standards or otherwise erroneously reported information to a CRA were insufficient to state a claim under the FDCPA. *See, e.g., Lee v. Sec. Check, LLC*, 3:09-CV-421-J-12TEM, 2010 WL 3075673, at *8 (M.D. Fla. Aug. 5, 2010) ("The [FDCPA] does not purport to impose civil liability for furnishing erroneous information to a credit reporting agency or for failing to correct erroneous information provided to a credit reporting agency."); *Acosta v. Campbell*, 6:04CV761ORL28DAB, 2006 WL 146208, at *13 (M.D. Fla. Jan. 18, 2006)[2] ("The FDCPA does not prohibit a debt collector from communicating to agencies, and a communication, in and of itself, to a consumer reporting agency, does not support a cause of action under the FDCPA.") (quoting *In re Creditrust Corp.*, 283 B.R. 826, 832 (Bkrtcy. D.Md. 2002)).

---

[2] The Court ultimately found that the Plaintiff stated a claim for violation of § 1692e(8) based on the allegation that the plaintiff notified the defendant that he disputed the debt and the defendant did not communicate that dispute to the CRA. Plaintiff in this case does not allege those facts.

Although Midland relies on two cases that dealt with the Fair Credit Reporting Act as opposed to the FDCPA, the Court finds them persuasive regarding the proposition that a debt collector's failure to comply with industry practices does not equate to a violation of the law. *See Mestayer v. Experian Info. Sols., Inc*, 15-CV-03645-EMC, 2016 WL 631980, at *4 (N.D. Cal. Feb. 17, 2016) ("Ms. Mestayer has failed to point to any authority indicating that a failure to comply with an industry standard is a failure to comply with the law. Furthermore, other courts have rejected an attempt to rely on the Metro 2 standard."); *Mortimer v. Bank of Am., N.A.*, C-12-01959 JCS, 2013 WL 1501452, at *12 (N.D. Cal. Apr. 10, 2013)(concluding that "Defendant's alleged noncompliance with the Metro 2 Format is an insufficient basis to state a claim under the FCRA"; noting, e.g., that "Plaintiff has not pled any basis to conclude that...any entity would have expected Defendant to report in compliance with the [Consumer Data Industry Association] guidelines"). *See also Giovanni v. Bank of Am., Nat. Ass'n*, C 12-02530 LB, 2013 WL 1663335, at *3 (N.D. Cal. Apr. 17, 2013) (dismissing plaintiff's claims and noting that "the [complaint] does not allege that [defendant] was required to follow the Metro 2 Format, the [Consumer Data Industry Association]'s instructions on credit reporting, or that deviation from those instructions constitutes an inaccurate or misleading statement.").

In this case, the Complaint does not allege any facts to support the contention that the classification code of "01" for the underlying debt is false, i.e. details of the transactions which form the basis of the alleged debt from which the Court could infer that they were financial transactions and not retail. Exhibit C to the Complaint is a list of the classification codes, but it contains no definition as to what constitutes "retail" versus "financial". *See* Doc. 2 at 10. Further, there are no allegations that Dash disputed the debt or that Midland failed to notify the credit

reporting agencies of the dispute from which the Court could construe the complaint as violating §1692e(8).

The Complaint's allegations, without more, are insufficient to state a claim. At this early point in the litigation, the Court cannot conclude that any purported misrepresentations based on using the wrong classification code fail as a matter of law or that the allegedly false statement is immaterial.[3] Plaintiff will be given one opportunity to amend his complaint to allege more facts in support of his claim under the FDCPA.

**Accordingly, it is ORDERED**:

1. Defendant's Motion to Dismiss (Doc. 15) is **GRANTED**.

2. Plaintiff's Complaint is **dismissed**, with leave to amend. Plaintiff may file an amended complaint within fourteen (14) days of the date of this Order, which cures the deficiencies discussed herein.

**DONE AND ORDERED** in Tampa, Florida on March 3, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

---

[3] Although not explicitly required by the FDCPA, many courts have held that statements must be materially false or misleading to be actionable under the FDCPA. *See, e.g, Miljkovic v. Shafritz and Dinkin, P.A.*, 8-14-CV-635-T-33TBM, 2014 WL 3587550, at *8 (M.D. Fla. July 18, 2014), *aff'd on other grounds*, 791 F.3d 1291 (11th Cir. 2015)("[T]o state a § 1692e claim, the plaintiff must allege that the conduct was materially misleading."). *Anselmi v. Shendell & Associates, P.A.,* 12-61599-CIV, 2015 WL 11121357, at *7 (S.D. Fla. Jan. 7, 2015), upon which Midland relies, stands for the proposition that Plaintiff's failure to allege materiality is fatal to his claim. The Court finds *Anselmi* distinguishable; in that case the court converted the motion to dismiss to a motion for summary judgment, and permitted evidence and additional briefing from the parties.